UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CRIMINAL ACTION NO. 3:16-CR-00005-JHM

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

WILLIAM EUGENE HINES                                                  DEFENDANT

## Memorandum Opinion and Order

This matter is before the Court on Defendant William Eugene Hines' motion to suppress evidence seized during a search of his residence on December 15, 2015. (DN 30.) Fully briefed, this matter is now ripe for decision. For the following reasons, the motion is **GRANTED**.

### I. Background

In July of 2015, law enforcement officials in Louisville received information from a confidential informant, known as CS1, that Hines was selling large amounts of heroin from his residence on Eastlawn Avenue. (Search Warrant Aff. [DN 30-2] at 5.) Officers were familiar with Hines, as he had a criminal history involving narcotics trafficking, and other heroin traffickers had informed officers that Hines had previously been involved in the trade. (*Id.* at 6.) In October 2015, Officers conducted surveillance on the Eastlawn residence, which was owned by Hines' mother, and observed Hines entering and exiting the residence. (*Id.*)

On December 14, 2015, CS1 contacted Louisville Metro Police Department ("LMPD") Detective Daniel Evans and informed him that he or she had seen "an amount of heroin" inside the Eastlawn residence that day. (*Id.* at 5.) Another confidential informant, known as CS2, also contacted Evans on December 14 to inform him that Hines wanted to meet with CS2 that night at a night club to discuss a shipment of heroin. (*Id.* at 5.) Officers saw Hines leave the Eastlawn residence and drive to the night club, but they did not observe the meeting between Hines and

CS2. (*Id.*) After this meeting, CS2 called Detective Evans in the early hours of December 15 and informed him that Hines would call CS2 around 1:00 p.m. on December 15 to inform CS2 that he was ready to sell CS2 a large amount of heroin. (*Id.*; Tr. Suppress. Hr'g [DN 41] 5:8–10.) Detective Evans and CS2 agreed that CS2 would call Evans after Hines called CS2, as officers would then make entry into the Eastlawn residence. (Tr. Suppress. Hr'g [DN 41] 14:10–13.)

On the morning of December 15, Detective Evans prepared a search warrant affidavit for the Eastlawn residence, and the warrant was signed at 12:17 p.m. that day. (Search Warrant Aff. [DN 30-2] at 7; Tr. Suppress. Hr'g [DN 41] 8:12–14.) Detective Evans then called CS2 to see if Hines had been in contact, but CS2 did not answer. (Tr. Suppress. Hr'g [DN 41] 5:10–12.)[1] After arriving at the Eastlawn residence, officers then observed CS2 leaving the residence. (*Id.* at 5:13–16.) Having determined that CS2 "went rogue," officers conducted a traffic stop on CS2 after he left the residence, and a search revealed heroin and cocaine on CS2's person. (*Id.* at 14:3–8, 15:18–21.) Officers then made entry into the Eastlawn residence, where heroin and cocaine were both seized. (Seized Property Records [DN 31-4] at 1–2.) Hines was arrested and subsequently indicted on two counts of possession of a controlled substance with an intent to distribute. (DN 8.) He moved to suppress any evidence seized as a result of the search of the

---

[1] There was considerable confusion at the suppression hearing as to whether Detective Evans had also tried to call CS2 in the early morning hours of December 15 and CS2 did not answer. Hines' post-hearing brief argues that "minutes after [the first] conversation at 12:26 a.m., Detective Evans called CS2 back . . . [but] CS2 didn't answer, and he didn't return Detective Evans' call." (Def.'s Mot. to Suppress [DN 45] at 5) (citations omitted). But the record indicates that only one phone call was not returned. Phone records show that phone calls were made between Detective Evans and CS2 on December 15 at 12:02 a.m., 12:08 a.m., and 12:26 p.m. (Tr. Suppress. Hr'g [DN 41] Def. Ex. 2.) Detective Evans testified that he last spoke with CS2 during the 12:08 a.m. phone call and that he made contact with CS2 during the early morning phone calls. (*Id.* at 30:2–9.) Thus, there was only one phone call where CS2 did not answer: the 12:26 p.m. call.

Eastlawn residence.[2] (DN 30). An evidentiary hearing was conducted, with the only testifying witness being Detective Evans. (DN 41.) The parties have filed post-hearing briefs. (DN 45, 48, 49, 53.)

## II. DISCUSSION

The grounds offered in support of Hines' motion to suppress have transformed as the case has progressed. Hines initially argued that the search of his residence actually began before the search warrant was signed by the state-court judge at 12:17 p.m. (DN 30.) However, the evidentiary hearing produced no evidence in support of this argument. Hines then argued in his post-hearing brief in favor of suppression that the search was invalid because, under *Franks v. Delaware*, 438 U.S. 154 (1978), Detective Evans should have told the magistrate who approved the search warrant that his source, CS2, was not returning his phone calls and may not be as reliable as initially believed. (DN 45, at 7–10.) However, as noted above, there was only one phone call placed by Detective Evans to CS2 that went unanswered: the 12:26 p.m. phone call, after the warrant had been issued. *See supra* note 1. Thus, there was no unreturned phone call that Detective Evans should have disclosed to the magistrate when seeking authorization for the search warrant, and *Franks* is inapplicable.[3]

In his reply brief, though, Hines yet again offers a different argument in favor of suppression, now asserting that the search warrant in its original form was insufficient to support a finding of probable cause, regardless of whether the affiant included his doubts about the reliability of CS2. (DN 49.) In light of this argument and Sixth Circuit case law regarding how

---

[2] Hines' motion to suppress also sought to exclude any evidence seized as a result of a search of a Rivershore Drive apartment in Louisville later in the day on December 15. However, that search yielded no evidence, and the United States no longer intends to use any evidence seized pursuant to that search warrant.

[3] Hines also argued that the search became illegal when Detective Evans saw CS2 leaving the Eastlawn residence, as he then knew that CS2 was not a reliable source and that he did not have probable cause to search the residence. *See United States v. Bowling*, 900 F.2d 926 (6th Cir. 1990). However, the Court need not reach this argument, as the warrant itself lacked probable cause.

the reliability of a confidential informant must be established, the Court requested, and the United States submitted, a surreply addressing this argument. (DN 53.) The Court finds Hines' argument on this point to be meritorious, as the search warrant affidavit does not establish the reliability of the confidential informants in this case, and as such, it lacks probable cause.

The affidavit for the search warrant clearly establishes that Hines is a known drug dealer, as it details Hines criminal past in narcotics trafficking, includes statements from other named individuals who verified Hines past involvement, and contains police corroboration of those statements. (Search Warrant Aff. [DN 30-2] at 5–6.) It also sufficiently establishes that Hines resides at the Eastlawn residence, as there is police corroboration of that fact as well. (*Id.*) However, while the Sixth Circuit has

> acknowledged that in the case of drug dealers, evidence is likely to be found where the dealers live . . . [w]e have never held . . . that a suspect's status as a drug dealer, standing alone, gives rise to a fair probability that the drugs will be found in his home. Rather, we have required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence.

*United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (citations omitted). Thus, something more is required for the warrant to be valid.

At this point, CS1 and CS2, and what the affidavit says about them, become very important. The information provided by CS1 indicates that Hines was currently storing drugs in the Eastlawn residence, and CS2 further provided that Hines was going to make these drugs available for purchase at the residence the next day. (Search Warrant Aff. [DN 30-2] at 5.) This information would adequately provide a nexus between Hines, his residence, and evidence of narcotics trafficking so as to create a fair probability that drugs would be found in the home.

4

However, when an affidavit relies upon information provided by a confidential informant, it is not sufficient to simply state what the informant said; information demonstrating why that informant should be believed must also be included. "Where . . . the bulk of the information in the affidavit comes from a confidential source, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances analysis." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (citations omitted). This is usually a straight-forward enquiry, as Sixth Circuit precedent "clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001) (citations omitted). But here, CS1 is merely described as "a reliable confidential informant;" likewise, CS2 is described as "another reliable confidential source."[4] (Search Warrant Aff. [DN 30-2] at 5.) This description raises two questions: first, is the description of the informants as "reliable" sufficient? And second, if the description is not sufficient, can the court still look to those statements in determining if probable cause exists?

First, a description of a confidential informant as "reliable" is clearly insufficient under Sixth Circuit precedent to establish that an informant is, in fact, reliable. The most pronounced rule on what is sufficient to demonstrate the reliability of a confidential informant comes from *United States v. Allen*, in which an en banc Sixth Circuit noted:

> [A]n affidavit based upon personal observation of criminal activity
> by a confidential informant who has been named to the magistrate
> and who, as the affidavit avers, has provided reliable information

---

[4] There is an additional statement in the affidavit that at least connects Hines to drug activity within about two weeks of the search, but that statement reads, "Source information as recently as December of 2015, has indicated that HINES is currently selling kilogram quantities of heroin throughout, but not limited to Louisville, KY." (Search Warrant Aff. [DN 30-2] at 6) (emphasis in original). This is even less descriptive than the statements provided by CS1 and CS2, as those are at least associated with a specific individual and provide some detail about the location from where Hines may be dealing drugs. Therefore, to the extent that the Court will give diminished weight to the information provided by CS1 and CS2, this statement is to be given even less weight, as it provides no indicia of its reliability.

5

> to the police in the past about criminal activity, though without
> further specificity as to the type of such activity, can be sufficient
> for a magistrate to find probable cause[.]

*Allen*, 211 F.3d 970, 971 (6th Cir. 2000) (en banc). The affidavit in this case fails to meet that requirement in two regards, as there is no evidence that the identities of CS1 and CS2 were ever provided to the magistrate, and there is no statement in the affidavit indicating that either of the informants had provided reliable information in the past. And while the requirements stated in *Allen* are not prerequisites for finding that an informant is reliable, the conclusory statement that the informant is "reliable" with no information as to why the officer believes this to be true is insufficient. For example, in *United States v. Higgins*, 557 F.3d 381, 389–90 (6th Cir. 2009), the Sixth Circuit determined that a warrant failed to establish probable cause when the warrant relied on statements made by an individual who, although he was known to the magistrate, was not adequately described as reliable in the warrant. But here, the confidential informants were not known to the magistrate, nor did the affidavit contain any details as to why the officer believed them to be reliable. *See also Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("An officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is likewise inadequate . . . this is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause") (quoting *Aguilar v. Texas*, 378 U.S. 108 (1964)). The Sixth Circuit's "'post-*Allen* confidential informant cases' have 'demand[ed] that an affidavit demonstrate more than simply blind faith in the words of an affiant who claims his unnamed informant is reliable.'" *United States v. Moore*, 661 F.3d 309, 316 (6th Cir. 2011) (Moore, J., concurring in judgment) (quoting *United States v. Ferguson*, 252 F. App'x 714, 721 (6th Cir. 2007)). The simple description of the informants in this case as "reliable" does not meet this requirement.

But that only leads to the next question: even though this description is insufficient, can the Court still credit the statements by the confidential informants? The answer, according to the Sixth Circuit, is yes, so long there are other indications that these informants are reliable. The court stated in *United States v. Frazier* that, "in the absence of any indicia of the informant[s'] reliability, courts insist that the affidavit contain substantial independent police corroboration." 423 F.3d 526, 532 (6th Cir. 2005) (citations omitted). This corroboration could potentially take the following forms:

> The affidavit could state that police corroborated significant parts of the informant's story. Or the affiant could attest "with some detail" that the informant provided reliable information in the past. Or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name. As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.

*United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) (citations omitted).

But again, the affidavit lacks the necessary details that would allow the magistrate to conclude that CS1 and CS2 are reliable. As previously stated, there is no indication that the informant has provided reliable information in the past, and the names of the informants were withheld from the magistrate. Further, the information provided by the informants does not "verify itself" through a detailed description of what was observed. The affidavit generically states that CS1 observed "an amount of heroin" at the Eastlawn residence on December 14; without any information such as how much was there, where in the residence it was located, or how it was packaged, this is not detailed enough to ensure the reliability of the statement. (Search Warrant Aff. [DN 30-2] at 5.) And finally, there was no independent police corroboration of the statements by CS1 and CS2 that placed drugs inside the Eastlawn residence.

The only information police were able to independently corroborate was that Hines did in fact go to the night club CS2 specified they would meet at. But the fact that police observed Hines entering a night club, as CS2 indicated he would, and nothing more does not corroborate "significant parts of the informant's story," as is required; the fact that Hines went to the night club is the *least* significant part of CS2's story.[5] *McCraven*, 401 F.3d at 697. *See also Higgins*, 557 F.3d at 400 (Clay, J., concurring in part and dissenting in part) ("Further, the affidavit contained no corroboration of the *criminal* details of Higgins' alleged activities") (emphasis in original).

In fact, the only statements in the affidavit that corroborate the information provided by CS1 are the statements by CS2, and vice versa. CS1 indicated drugs were in the residence on a particular day; CS2 indicated that drugs would be available for sale at the residence the next day. While these statements do tend to corroborate one another, allowing one unnamed informant whose reliability is unknown to corroborate another unnamed informant whose reliability is unknown is a step too far, especially when there is no other information corroborating a substantial part of the statements by the informants. *See United States v. Jeffries*, 457 F. App'x 471, 476 (6th Cir. 2012) ("The reports of [two confidential informants indicating drug activity within a home], standing alone, would not support a finding of probable cause, absent independent corroboration or indicia of the informants' reliability"). While the United States emphasizes that the confidential sources appear to have been independent of each other, the affidavit at best merely creates a circle of speculation: we can believe CS1 because CS2 says the

---

[5] The United States also notes that, while trailing Hines on his way to this meeting, he was observed driving "opposite of traffic down a one-way street before entering a dark, narrow alley," and that such a maneuver is "consistent with narcotics traffickers." (Search Warrant Aff. [DN 30-2] at 5) (emphasis in original). Without passing judgment on whether such a traffic violation is actually indicative of narcotics trafficking, at best the observation is just one more piece of evidence establishing what was already clear: that Hines was a known narcotics dealer. The fact that Hines did this on his way to the night club meeting does not give CS2 any more credibility, as he did not *tell* officers before the meeting that Hines would drive the wrong way down a one-way street.

8

same thing, and we can believe CS2 because CS1 says the same thing. This is not the "substantial independent police corroboration" required by the Sixth Circuit to give weight to the statements of a confidential informant. *Frazier*, 423 F.3d at 532. *Compare with Coffee*, 434 F.3d at 893–94 ("although there were no statements in the affidavit about the reliability of the CI, Officer Adams' statements that he set up [a] controlled buy and took necessary precautions before and after the orchestrated purchase adequately corroborated the CI's information and, thus, provided sufficient probable cause for the issuance of the search warrant"). Other circuits have taken into consideration whether the statements of two confidential informants may serve to corroborate each other. *E.g.*, *United States v. Schaefer*, 87 F.3d 562, 566 (1st Cir. 1996) ("Courts often have held that consistency between the reports of two independent informants helps to validate both accounts"). But even in such cases, there is always at least something more, such as a statement indicating that the informant "had assisted the police in the apprehension of another drug felon," *id.*, or that the police had independently corroborated the information through their own investigation. *See United States v. Mitten*, 592 F.3d 767, 773–74 (7th Cir. 2010). Thus, the argument by the United States is unavailing.

When determining if probable cause exists, "[s]earch warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny." *Coffee*, 434 F.3d at 892. But even when analyzing the totality of the circumstances, there are certain pieces of information the Court must look for, especially in a case involving the use of confidential informants. If, as was the case here, the search warrant affidavit (1) is based on information from an unnamed confidential informant (2) whose identity is not known to the magistrate, (3) it contains no information as to why the officer or the magistrate should believe that the informant is "reliable", such as past instances of providing reliable information, (4) it lacks independent

police corroboration of significant parts of the informant's story, and (5) it contains no other indicia of reliability as to the statements provided by the informant, the totality of the circumstances do not add up to probable cause. The only justification for believing that probable cause existed was the statements from CS1 and CS2. But without substantial corroboration of those statements (except the statements by the other confidential informant), reliance on these statements is unreasonable. Therefore, the warrant lacks probable cause.

Hines would still not be entitled to suppression of the evidence seized as a result of the search of his Eastlawn residence if the good-faith exception to the exclusionary rule were applicable. *United States v. Leon*, 468 U.S. 897 (1984). However, the good-faith exception is inapplicable to this case, as the officer who wrote the search warrant affidavit and applied for and received the warrant was the same officer who executed it: Detective Evans. (Tr. Suppress. Hr'g [DN 41] 5:17–20, 28:17.) In *United States v. Baxter*, 889 F.2d 731, 734 (6th Cir. 1989), the Sixth Circuit discussed *Leon* and noted that

> suppression . . . should be ordered only . . . in those unusual cases in which exclusion will further the purposes of the exclusionary rule. The rule should not apply when an officer acting with objective good faith has obtained a search warrant and acted within its scope. Exclusion of such evidence results in [p]enalizing the officer for the magistrate's error, rather than his own.

But the *Baxter* court emphasized the particular fact that, in *Leon*, "the same officer who procured the search warrant and had supplied insufficient information to constitute probable cause was not the executing officer." *Id.* Therefore, the error was not committed by the executing officer but rather the magistrate and the officer seeking the warrant, and the executing officer should not be penalized. That is different from the current situation, in which Detective Evans both applied for and executed the warrant. Our sister court has summarized the importance of *Leon* and *Baxter* when the same officer procures a warrant and executes it:

> As a police officer, Detective Lewis is charged with an understanding of what evidence may properly constitute probable cause. According to the Sixth Circuit Court of Appeals, where an officer is charged with knowledge of a valid search warrant affidavit's requirements, fails to fulfill those requirements, and relies on a warrant issued on the basis of that affidavit, the *Leon* exception does not apply. *United States v. Leake*, 998 F.2d 1359, 1367 (6th Cir. 1993). Similarly, the Sixth Circuit has indicated that the *Leon* exception does not apply where an insufficient affidavit was prepared and submitted by the same officer who executes the warrant, and who should have realized the insufficiency of the affidavit. *United States v. Baxter*, 889 F.2d 731, 734 (6th Cir. 1989). This is what occurred in the present case. Even taking all of the evidence in the affidavit as true, none of it could lead a reasonable police officer, under the totality of the circumstances, to believe that probable cause existed to search the residence in question.

*United States v. Mosley*, 2008 WL 1868012, at *7 (E.D. Ky. Apr. 24, 2008). *See also Groh v. Ramirez*, 540 U.S. 551, 564 (2004) ("Moreover, because petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid"). Here, the warrant lacked the necessary indicia that the statements by CS1 or CS2 were reliable, beyond the conclusory statement that each was a "reliable" informant. Thus, it was unreasonable for Detective Evans to have relied on the search warrant affidavit that he himself prepared, as he was aware of its contents and should have known that more information was required to establish the reliability of the confidential informants under the Sixth Circuit's post-*Allen* cases. Therefore, the good-faith exception is inapplicable to this case, and suppression of the evidence seized as a result of the search of the Eastlawn residence is required.

### III. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant William Eugene Hines' motion to suppress (DN 30) is **GRANTED**.

*Joseph H. McKinley*
**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 5, 2017

cc: counsel of record